IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> $30,000.00 IN UNITED STATES ) <br> CURRENCY, ) <br> ) <br> Defendant. ) <br> _____ ) | CV. NO. 10-00014 DAE |

ORDER: (1) GRANTING THE UNITED STATES' MOTION TO DEPOSE CURTIS VAN DE VELD, ESQ. AND (2) DENYING AS MOOT THE UNITED STATES' MOTION FOR AN ORDER TO SHOW CAUSE

Pursuant to Local Rule 7.1(e), the Court finds this matter suitable for disposition without a hearing. After reviewing the Motion and the opposing memorandum, the Court hereby GRANTS the United States' Motion to Depose Curtis Van de veld, Esq. (doc. # 38) and DENIES AS MOOT the United States' Motion for an Order to Show Cause (doc. # 33).

BACKGROUND

I. Facts

On December 31, 2009 and January 13, 2010, Guam Police Department ("GPD") informants made controlled buys of methamphetamine

hydrochloride (ice) from Kenrick O. Gajo ("Gajo") at the Gajo Song Auto Body Shop in Barrigada, Guam. (Doc. # 1, Ex. A, Declaration of FBI Special Agent Frank Runles ("Runles Decl.") ¶ 3.) On the afternoon of January 14, 2010, GPD officers arrived at Gajo's body shop to execute a search warrant. (Id. ¶ 4.) The officers induced Gajo to leave his shop, and took him to the office of GPD's Criminal Investigations Section ("CIS"), where he refused to waive his constitutional rights and requested an attorney.[1] (Id.) Curtis C. Van de veld, Esq. ("Van de veld") arrived at CIS a few hours later to confer with Gajo. (Id. ¶ 5.)

Van de veld subsequently informed GPD officials that Gajo was willing to cooperate, and GPD officials called Guam Assistant Attorney General Phil Tydingco to negotiate a plea agreement. (Id. ¶¶ 5–6.) The parties ultimately entered into a plea agreement, in which Gajo admitted that he had between $140,000 and $160,000 in cash at his business, that this cash was related to his distribution and/or sale of controlled substances, and that he would provide the Government of Guam with the location of the money. (Id. ¶ 6; Runles Decl. Ex. 1 ("Plea Agreement") ¶¶ 4, 6, 8.) If Gajo's cooperation led to the arrest and prosecution of one or more individuals, the Government of Guam agreed that it would not seek criminal or civil forfeiture of Gajo's real property, bank accounts,

---

[1] The search warrant was never executed. (Runles Decl. ¶ 4.)

the cash in his wallet at the time of arrest, his or his wife's vehicles, the automotive shop, or personal property that was not contraband. (Runles Decl. ¶ 6; Plea Agreement ¶ 9(c).) The Government of Guam also agreed that $30,000 of the $140,000 to $160,000 cash "will not be subject to forfeiture"; instead, it would be used to pay Gajo's attorneys fees. (Runles Decl. ¶ 7; Plea Agreement ¶ 9(d).)

After executing the plea agreement, in the early morning hours of January 15, 2010, the parties went to Gajo's auto shop, and he showed GPD officers where he had hidden two backpacks containing cash inside a stack of tires. (Runles Decl. ¶ 8.) While still at the auto shop, GPD Officer Frank M. Santos paid $30,000 of the cash to Van de veld in $20 denominations. (Id.)

II.     Procedural History

This is a civil action in rem for forfeiture of $30,000 in United States currency. On June 17, 2010, the United States initiated this forfeiture action by filing a Verified Complaint of Forfeiture, pursuant to 21 U.S.C. § 881(a)(6), which subjects to forfeiture all proceeds traceable to drug transactions. (Doc. # 1.) The United States filed an Application for Warrant of Arrest In Rem the same day. (Doc. # 3.) On June 21, 2010, U.S. Magistrate Judge Joaquin V.E. Manibusan, Jr. issued a Warrant of Arrest In Rem, directing Van de veld to give $30,000 in United States currency to the U.S. Marshals, or in the alternative, to issue a check in the

3

amount of $30,000, to be deposited in the U.S. Marshals Service Seized Asset Deposit Fund. (Doc. # 4.) If Van de veld failed to do either, Judge Manibusan directed him to file a response to the Application for Warrant of Arrest <u>In Rem</u>, explaining why the court should vacate or quash the <u>in rem</u> arrest warrant. (<u>Id.</u>)

Van de veld failed to turn over the defendant property, and on June 25, 2010, he filed a Response to the United States' Application for a Warrant of Arrest <u>In Rem</u>, explaining that he spent the $30,000 on his regular expenses, that the funds were fully spent in March 2010, and that he did not have sufficient funds to write a check for $30,000. (Doc. # 6.) On June 28, 2010, the United States filed a Response Concerning Forfeiture. (Doc. # 8.) Van de veld filed a Reply on July 9, 2010. (Doc. # 9.) On July 20, 2010, Judge Manibusan held a show cause hearing, during which he afforded the parties an opportunity to submit supplemental briefing regarding the court's ability to exercise jurisdiction in the absence of the res. (Doc. # 13.) The United States filed its Additional Brief Requested by the Court on July 23, 2010 (doc. # 12), and on July 26, 2010, Van de veld filed his Reply to Supplemental Brief (doc. # 14). On July 27, 2010, Van de veld filed an Errata to the Reply.[2] (Doc. # 15.)

On October 6, 2010, the United States filed a Motion to Vacate the

---

[2] Van de veld filed a Verified Claim on July 27, 2010 (doc. # 16); he filed a Verified Answer on August 16, 2010 (doc. # 19).

4

Scheduling Notice issued August 5, 2010, asserting that the Court does not have jurisdiction over the matter until the defendant $30,000 is in the Court's custody or control. (Doc. # 21.) Van de veld did not file an opposition, and the United States did not file a reply.

On November 15, 2010, Judge Manibusan issued an Order declining to hold Van de veld in contempt for failure to comply with the Warrant of Arrest <u>In Rem</u>, which ordered him to either surrender the defendant $30,000 to the U.S. Marshals or issue a check in that amount. (Doc. # 24.)

On August 23, 2011, the Court heard via videoconference the United States' Motion to Vacate Scheduling Notice. On August 25, 2011, the United States filed a Brief Concerning Jurisdiction for Forfeiture of Property Located in the United States. (Doc. # 30.) Van de veld filed a Brief Re: Jurisdiction of Court on the same day. (Doc. # 31.) On August 30, 2011, the Court issued an order granting in part and denying in part the United States' Motion to Vacate and directing the United States to file an appropriate motion to secure the defendant property.

On December 1, 2011, the United States filed a Motion for an Order to Show Cause, asking that the Court direct Mr. Van de veld to comply with the Warrant of Arrest <u>In Rem</u> or show cause why he should not be held in contempt.

5

(Doc. # 33.) On February 1, 2012, the United States filed a Motion to Depose Curtis Van de veld, Esq. (Doc. # 38.) On February 24, 2012, Van de veld filed an Opposition. (Doc. # 41.) On March 15, 2012, the United States filed a Response, and on April 4, 2012 filed an Amended Response. (Docs. ## 42, 43.)

## DISCUSSION

"A forfeiture action is <u>in rem</u>. Jurisdiction <u>in rem</u> is predicated on the 'fiction of convenience' that an item of property is a person against whom suits can be filed and judgments entered." <u>United States v. Ten Thousand Dollars ($10,000.00) in U.S. Currency</u>, 860 F.2d 1511, 1513 (9th Cir. 1988) (citing <u>Cont'l Grain Co. v. Barge FBL-585</u>, 362 U.S. 19, 22–23 (1960)). "Dating back to early admiralty law, constructive possession of a res had been a prerequisite to establishing in rem jurisdiction." <u>United States v. Approximately $1.67 Million (US) in Cash, Stock, and Other Valuable Assets</u>, 513 F.3d 991, 996 (9th Cir. 2008) (citations omitted). It was therefore well-established that a court "must have actual or constructive control over the res when an <u>in rem</u> forfeiture suit is initiated," <u>Republic Nat'l Bank of Miami v. United States</u>, 506 U.S. 80, 84 (1992), or "[j]urisdiction over the <u>res</u> [must be] obtained by arrest under process of the court." <u>United States v. 2,164 Watches, More or Less, Bearing a Registered Trademark of</u>

6

Guess?, Inc., 366 F.3d 767, 771 (9th Cir. 2004) (quoting Alyeska Pipeline Serv. Co. v. The Vessel Bay Ridge, 703 F.2d 381, 384 (9th Cir. 1983)).

The United States asserts that this Court "has no jurisdiction over this matter until the defendant $30,000 is in the custody or control of the court." (Doc. # 21 at 1.) As this Court noted in its August 30, 2011 Order, the Ninth Circuit appears to have abandoned the traditional requirement of actual or constructive control over the res in cases of in rem jurisdiction. $1.67 Million, 513 F.3d at 998. In $1.67 Million, the U.S. Court of Appeals for the Ninth Circuit ruled that 28 U.S.C. § 1355, which governs federal courts' jurisdiction over civil forfeiture actions, "lodge[s] jurisdiction in the district courts without reference to constructive or actual control of the res." Id. The court held that, pursuant to § 1355, "[w]here an act or omission giving rise to the forfeiture occurs in a district, the corresponding district possesses jurisdiction over the forfeiture action regardless of its control over the res."[3] Id.

---

[3] In reaching its decision, the court relied upon the plain language of the statute, which reads in relevant part:
    (b)   (1)   A forfeiture action or proceeding may be brought in—

        (A)   the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred, or

        (B)   any other district where venue for the forfeiture action or proceeding is specifically provided for in

At first glance, $1.67 Million appears to provide a basis for the Court to exercise jurisdiction over this matter in the absence of actual or constructive control of the defendant $30,000. However, it is not entirely clear whether the Ninth Circuit's interpretation of § 1355 is applicable when the res is located within the United States. The res at issue in $1.67 Million was located in a foreign country. 513 F.3d at 995 (funds located in accounts in the Cayman Islands). Furthermore, every circuit court that has interpreted § 1355 as eliminating the requirement of control did so in the context of a res located in a foreign country. Contents of Account No. 03001288 v. United States, 344 F.3d 399, 401 (3d Cir. 2003) (bank accounts located in the United Arab Emirates); United States v. All Funds in Account in Banco Espanol de Credito, Spain, 295 F.3d 23, 24 (D.C. Cir.

---

section 1395 of this title or any other statute.

    (2)    Whenever property subject to forfeiture under the laws of the United States is located in a foreign country, or has been detained or seized pursuant to legal process or competent authority of a foreign government, an action or proceeding for forfeiture may be brought as provided in paragraph (1), or in the United States District Court for the District of Columbia.

28 U.S.C. § 1355. The court also noted that the Third Circuit Court of Appeals and the D.C. Circuit had previously reached the same determination regarding the correct interpretation of § 1355. Contents of Account No. 03001288 v. United States, 344 F.3d 399, 403 (3d Cir. 2003) (finding that § 1355 "grants district courts jurisdiction over the property at issue in forfeiture actions based on the plain language of the statute"); United States v. All Funds in Account in Banco Espanol de Credito, Spain, 295 F.3d 23, 26–27 (D.C. Cir. 2002) (same).

2002) (noting that "Congress intended the District Court . . . to have jurisdiction to order the forfeiture of property located in foreign countries").

Given the uncertainty regarding the applicability of the holding in $1.67 Million, the Court in its previous order declined to exercise jurisdiction based upon that case alone, and directed the United States to file an appropriate motion to secure the defendant property. (Doc. # 32 at 9.) In response, the United States filed a motion to depose Van de veld in order to establish the location of the defendant $30,000 and thereby establish this Court's jurisdiction. (Doc. # 38.) Federal Rule of Civil Procedure 30 provides that a party seeking to take a deposition before the time specified in Rule 26(d) must first obtain leave of court. Fed. R. Civ. P. 30(a)(2)(iii).

When a district court's jurisdiction is in question, the court may permit parties to conduct discovery to ascertain relevant facts. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."); Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008) (noting that the decision to grant or deny jurisdictional discovery requests is within the district court's discretion). "Discovery should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more

9

satisfactory showing of the facts is necessary.'" Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986) (quoting Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.3d 1280, 1285 n.1 (9th Cir. 1977)). However, if a request for jurisdictional discovery is "based on little more than a hunch that it might yield jurisdictionally relevant facts," the district court may refuse to allow it. Boschetto, 539 F.3d at 1020.

This Court concludes that a deposition of Van de veld is likely to yield jurisdictionally relevant facts. Specifically, a deposition will reveal facts that will aid the United States in determining where the defendant $30,000 and its traceable proceeds are located and thereby facilitate the requisite seizure and control of the res.

Van de veld's claim that he no longer has possession of the defendant $30,000 does not prevent this Court from acquiring control over the res. Title 18 U.S.C. § 984, which governs civil forfeiture of fungible property, provides:

(a) (1) In any forfeiture action in rem in which the subject property is cash . . .

    (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and

    (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

> (2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

18 U.S.C. § 984. Pursuant to § 984, the United States need not identify the very $30,000 handed to Van de veld in the early morning hours of January 15, 2010; it may seize any "identical property" found in any bank account that once held any part of the defendant property. See, e.g., Marine Midland Bank, N.A. v. United States, 11 F.3d 1119, 1126 (2d Cir. 1993) ("In a forfeiture proceeding under § 984 . . . the government no longer is required to show that money in a bank account is the specific money involved in the underlying offense.").

Furthermore, any property derived from and traceable to the defendant $30,000 is forfeitable. The forfeiture provision under which the United States brought this action provides that "[a]ll moneys . . . or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance . . . , [and] all proceeds traceable to such an exchange" are subject to forfeiture. 21 U.S.C. § 881(a)(6). "Tracing of money does not require that the identical money be traced." United States v. Check No. 25125 in the Amount of $58,654.11, 122 F.3d 1263, 1264 (9th Cir. 1997) (holding that a judgment obtained in a civil suit against the state for unlawful seizure of drug money constitutes the

11

traceable proceeds of drug transactions); see also United States v. 6415 N. Harrison Ave., 11-cv-00304, 2011 WL 2580335, at *3–4 (E.D. Cal. June 28, 2011) (holding that real property paid for in part by proceeds traceable to money laundering is subject to partial forfeiture).

Van de veld's Opposition to the United States' Motion to Depose primarily advances arguments regarding the merits of the United States' forfeiture claim.[4] The Court declines to reach those issues at this time; the establishment of jurisdiction is necessarily antecedent to a resolution of substantive issues. Van de veld also asks that, if the Court grants the United States' Motion to Depose, it limit the deposition to inquiries regarding the location or disposition of the defendant $30,000.[5] The Court agrees that the deposition should be limited to inquiries that

---

[4] Issues raised by both parties include whether the United States is precluded from bringing this action because it is bound by the "plea agreement" negotiated by an Assistant Attorney General of the Government of Guam and whether Van de veld is an "innocent owner."

[5] The Court rejects Van de veld's suggestion that such a limitation would preclude the United States from tracing the defendant $30,000 and property derived from it. Van de veld argues that "though money is fungible, once the money received is shown to have been dissipated the funds are no longer traceable and no substitute property is required." (Doc. # 41 at 9.) Title 18 U.S.C. § 984 directly contradicts that argument. Van de veld cites to a number of cases in support of this claim, none of which are on point. In Republic Nat'l Bank of Miami v. United States the Supreme Court never addressed the fungibility or traceability of money. 506 U.S. 80 (1992). United States v. Moffitt dealt with an action in detinue under Virginia common law, not with a claim brought pursuant to a federal forfeiture law. 875 F. Supp. 1190 (E.D. Va. 1995). U.S. v. Banco Cafetero Panama was decided prior to the enactment of § 984 and its holding was

12

are likely to reveal jurisdictionally relevant facts. The United States may therefore inquire into the following: what Van de veld did with the defendant $30,000; whether there are any funds in the same place(s) or account(s) that once held the defendant $30,000; and whether Van de veld has any property derived from and traceable to the defendant $30,000. Should the United States wish to make inquiries beyond those provided for, it may file a request to that effect within five (5) days of the date of this Order describing the additional inquiries it wishes to make and justification for making them.

Having determined to grant the United States' Motion to Depose, the Court finds that the United States' Motion for an Order to Show Cause is moot at this time.

## CONCLUSION

For the reasons stated above, the Court GRANTS the United States' Motion to Depose Curtis Van de veld, Esq. and DENIES AS MOOT the United States' Motion for an Order to Show Cause.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 18, 2012.

---

superseded by § 984. 797 F.2d 1154 (2d Cir. 1986); see United States v. All Funds Presently on Deposit or Attempted to be Deposited in Any Accounts Maintained at Am. Express Bank, 832 F. Supp. 542 (E.D.N.Y. 1993) (noting that "Section 984 . . . explicitly overrules Banco Cafetero").

13



DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE


United States of America v. $30,000.00 in United States Currency, Cv. No. 10-00014 DAE; ORDER: (1) GRANTING THE UNITED STATES' MOTION TO DEPOSE CURTIS VAN DE VELD, ESQ. AND (2) DENYING AS MOOT THE UNITED STATES' MOTION FOR AN ORDER TO SHOW CAUSE